## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| Beth Andrew-Berry, individually and as a representative of the GWA, LLC 401(k) Profit Sharing Plan and a class of similarly situated persons, | |
| Plaintiffs, | Case No.: |
| v. | **CLASS ACTION COMPLAINT** |
| George A. Weiss and GWA, LLC, | JULY 24, 2023 |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff Beth Andrew-Berry, by and through her attorneys, on behalf of herself, all other similarly situated individuals, and the GWA, LLC 401(k) Profit Sharing Plan, alleges the following:

## I.    NATURE OF ACTION

1.    This is a civil enforcement action brought pursuant to Sections 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), for violations of ERISA's fiduciary duties and prohibited transactions provisions. Plaintiff Beth Andrew-Berry ("Plaintiff"), who is a participant in the GWA, LLC 401(k) Profit Sharing Plan (the "Plan"), brings this action on behalf of the Plan and all participants and beneficiaries in the Plan during the Class Period.

2.    This action presents a paradigmatic case of conflicted fiduciaries and their misuse of retirement plan assets to further their own pecuniary interest, in violation of ERISA.

3.      In passing ERISA, "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators[.]" *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985). To root out this misuse of retirement plans' assets, Congress imposed on plan fiduciaries "the highest [duties] known to the law," *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982), and "categorically" barred self-dealing transactions likely to injure retirement plans. *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993).

4.      Defendants are the fiduciaries responsible for managing the Plan and the employee retirement assets held in the Plan.

5.      As described herein, Defendants violated ERISA's fiduciary duties under 29 U.S.C. § 1104 and its prohibitions on self-dealing under 29 U.S.C. § 1106 by using the Plan and its assets to advance the business interests of GWA, LLC ("GWA" or the "Company") and its founder, George A. Weiss, over those of Plan participants—which are current and former employees of the Company.

6.      The Company is a hedge fund manager that offers investment products, including its flagship hedge fund: the "Weiss Multi-Strategy Partners (Cayman) Ltd." (the "Weiss Hedge Fund").

7.      The Company created a mutual fund named the "Weiss Alternative Multi-Strategy Fund" (the "Weiss Mutual Fund") in December 2015 and the Company markets the Mutual Fund as deploying a neutral strategy which generally "replicates" its Hedge Fund's strategy.  Together the Weiss Hedge Fund and Weiss Mutual Fund are referred to as the "Weiss Funds."

8.      Both Weiss Funds are considered "alternative investments" and are designed to be used as alternatives to fixed income investments, and fixed income is generally accepted as a minority allocation for a "traditional portfolio" as reflected in the Company's marketing materials.

9.      Defendants' portfolio allocation entirely to the Weiss Funds, both of which used alternative strategies, is highly unprecedented. Indeed, retirement industry studies have observed that only 0.1% of defined contribution plan (i.e., 401(k) plan) assets are invested in "alternative investments." Yet, 100% of the Plan's investments (all of which are 401(k) assets) were and continue to be invested in this niche category.

10.     Plaintiff is aware of no other retirement plan that maintains a similar asset allocation as GWA's plan allocation. That non-conflicted fiduciaries did not adopt Defendants' outlier strategy is no accident. The Weiss Funds' alternative strategies are not designed to be used for an entire retirement portfolio because such portfolios must have substantial exposure to capital appreciation asset, such as stocks/equities, and grow sufficiently to provide for employees during the decades they may live after retirement. By contrast, the Weiss Funds are intended to serve as an alternative to a traditional fixed income fund, which is generally only a minority allocation within a well-diversified retirement portfolio.

11.     Because of the Weiss Funds' design as alternatives to fixed income alone, investing the Class's retirement savings entirely in Weiss Funds is imprudent and contrary to generally accepted investment principles, including Modern Portfolio Theory. Prevailing practice for retirement portfolio allocation recognizes that the portfolio should reflect a mix of asset classes, including substantial exposure to stocks/equities to produce the long-term capital appreciation necessary for participants to save adequately for retirement. *See, e.g.*, SEC, Beginners' Guide to Asset Allocation, Diversification, and Rebalancing (Aug. 28, 2009) and 29 C.F.R. § 2550.404c-5(e)(4)(i)-(iii).

12.     Separate and apart from Defendants' failure to ensure that the Plan's retirement portfolio reflected a balanced allocation to different asset classes, the Weiss Mutual Fund (in

particular) lacked the performance history, market acceptance, and cost structure to be a substantial investment for the Plan. Specifically, near the time the Plan first invested in the Weiss Mutual Fund, the fund had only one full calendar year of performance history and just $7.75 million of assets under management (AUM). It also had an expense ratio that was 650% more than average. As is evident from the Weiss Mutual Fund's paltry market acceptance, non-conflicted plan fiduciaries do not invest their employees' retirement savings in untested "alternative" investments with extraordinarily high costs.

13.     Notably, when Defendants moved $25 million of their employees' retirement savings to the Weiss Mutual Fund in the second half of 2017, the Weiss Mutual Fund's total assets under management sharply increased by 300%, which improved the Mutual Fund's marketability and financial position through a larger asset base. This benefitted the Company and its founder George Weiss, who were supposed to be managing their employees' retirement savings with undivided loyalty and the highest duty of care known to the law.

14.     Defendants' conduct significantly impaired participants' retirement savings. The Plan's portfolio bears no resemblance to other retirement portfolios managed by non-conflicted fiduciaries. And, because employees' retirement savings were used to prop up the Weiss Funds, the Plan significantly underperformed a well-balanced retirement portfolio.

15.     Further, unlike the majority of defined contribution plans (i.e., 401(k) plans), which provide a menu of fund options from which employees can choose to invest their retirement savings, here the Company retained all control over how employees' retirement savings would be invested and directed those savings entirely into its own investment products.

16.     Defendants abused their control over their employees' retirement savings. Ultimately, Defendants invested 100% of the Plan's assets in its own proprietary products (the

Weiss Funds, both deploying alternative strategies) throughout the Class Period.[1] And, as a result, the employee retirement savings Defendants managed are not invested in a single non-Weiss, non-alternative strategy.

17.    Further the Plan's investment expenses—mostly paid to Defendants—swelled substantially above average. As a result, Plan participants' accounts are worth at least 30% less than they would have been had the Plan been managed prudently, loyally, and in strict conformance with ERISA's prohibited transaction rules.

18.    Plaintiff brings this action to remedy these wrongs, restore all losses suffered by the Plan and its participants, and obtain other equitable relief as provided by ERISA.

## II.    JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

20.    Venue is proper in this District and in this Division pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District and this Division. In addition, the alleged fiduciary breaches and other ERISA violations took place in this District and Division, and Defendants reside here and may be found in this District and Division.

21.    This Court has personal jurisdiction over Defendants because they reside in this District, transact business in this District, and/or have significant contacts with this District.

---

[1] The Plan maintains a small amount of cash investments to pay participants who either take loans from their retirement accounts or cash out their accounts (i.e., pay the benefits owed to the participants).

III.    **PARTIES**

A.    **Plaintiff**

22.    Plaintiff Beth Andrew-Berry resides in West Hartford, Connecticut. Plaintiff was an employee of George Weiss Associates, Inc. or one of its affiliates from 2016 until 2022. Plaintiff is and remains a participant in the Plan.

23.    Plaintiff does not control how her individual account in the Plan is invested. Instead, Defendants (GWA, LLC and George A. Weiss) make all investment decisions and direct the investment of Plaintiff's individual account, thereby exercising fiduciary discretion and authority over Plaintiff's individual retirement account.

24.    The same is true for Plan as a whole. Plan participants are not permitted to choose how to invest their retirement savings from a menu of options. Instead, Defendants (GWA, LLC and George A. Weiss) direct the investment of all participants' individual retirement accounts.

25.    Defendants invested Plaintiff's and the Class's retirement accounts—which are part of the Plan—entirely in the two Weiss Funds described herein.

26.    Plaintiff and the Plan have suffered financial harm and have been injured by Defendants' unlawful conduct as described herein. Had Defendants not engaged in the unlawful misconduct described herein, her account would be worth significantly more than it is today.

27.    Relatedly, Defendants have been unjustly enriched from the various fees, expenses, and other economic support generated as a result of their fiduciary misconduct and prohibited transactions in connection with Plaintiff's Plan investments and the investments of other Plan participants.

28.    Plaintiff, like substantially all Plan participants, was not provided any information regarding the substance of deliberations, if any, of the Defendants' decisions to invest the Plan's assets during the Class Period. She otherwise had no knowledge of the substance of the

Defendants' deliberations. Plaintiff discovered her claims less than one year before commencing this action.

29.     Prior to bringing this action, Plaintiff requested documents from the Plan's trustee concerning investment decisions made with the Plan's assets. The trustee responded that "Plan participants are not entitled to underlying documents or materials used by the Plan's Trustee in making decisions regarding investments for the Plan's assets."

**B.     Defendants**

30.     GWA, LLC is a partnership formed in Connecticut that engages in securities investment activity directly and/or through its subsidiaries and affiliates. The Company's principal place of business is 400 Capital Boulevard, Suite 201, Rocky Hill, CT 06067.

31.     The Company is the Plan's sponsor within the meaning of 29 U.S.C. § 1002(16)(B).

32.     The Company is an employer of employees that participate in the Plan. As a result, the Company is a party in interest to the Plan within the meaning of 29 U.S.C. § 1002(14)(C).

33.     The Company is also the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A). The Company is a fiduciary to the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because, as the Plan's administrator, it has and had discretionary authority and discretionary control in the administration of the Plan.

34.     The Company is also a Named Fiduciary for the Plan.

35.     George A. Weiss is the Company's founder and CEO of the Company's investment advisory subsidiary, Weiss Multi-Strategy Advisers LLC.

36.      During the Class Period, the Company received contributions from, and made distributions to, its partners, which included George A. Weiss and persons and entities related to George A. Weiss.

37.    George A. Weiss is the Plan's trustee within the meaning of 29 U.S.C. § 1103 and at all relevant times has and had authority and discretion to manage and control the assets of the Plan.

38.    During the Class Period, George A. Weiss selected and/or retained the investments in which the Plan invested. He authorized the investment of the Plan's assets into funds affiliated with the Company. As a result, George A. Weiss is a fiduciary to the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

39.    George A. Weiss is also a party in interest to the Plan within the meaning of 29 U.S.C. § 1002(14) because he is a fiduciary to the Plan, an employee of the Company, and a direct or indirect owner of the Company with a significant stake in the Company.

40.    George A. Weiss has previously been the subject of a Senate investigation surrounding the abuse of structured financial products by misusing basket options to avoid taxes and leverage limits.

## IV.    FACTUAL ALLEGATIONS

### A.    The Plan

41.    The Plan is a tax-qualified defined contribution pension plan subject to the provisions of ERISA. At all relevant times, the Plan was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A).

42.    The Plan is intended to encourage savings and provide retirement income for GWA employees and former employees and their beneficiaries.

43.    The Plan covers eligible employees of GWA, including its subsidiaries and affiliates.

44.     The Plan's benefits are funded by participants' voluntary contributions, participant rollover contributions, employer profit sharing contributions, and/or employer safe harbor contributions. The Plan is intended to qualify under Internal Revenue Code § 401(k).

45.     Individual accounts are maintained for each participant. The value of these individual accounts is based on its proportion of the total assets held by the Plan.

46.     Participants *do not* direct the investments of their individual accounts or of the Plan. All of the Plan's investments are Company-directed by the Plan's trustee—Defendant George A. Weiss.

47.     As of December 31, 2021, the Plan had approximately $103 million in assets and 187 participants.

**B.      The Weiss Funds**

48.     All the Plan's assets are invested in two proprietary investments: a hedge fund named Weiss Multi-Strategy Partners (Cayman) Ltd. and a mutual fund named the Weiss Alternative Multi-Strategy Fund (collectively the "Weiss Funds").

49.     The Weiss Funds are both affiliated with the Defendants. Weiss Multi-Strategy Advisers LLC is the investment advisor and/or manager for both Weiss Funds.

50.     Weiss Multi-Strategy Advisers LLC is majority owned by GWA, LLC, which is ultimately owned by George A. Weiss and his relatives.

51.     The Plan's portfolio is subject to enormous concentration risk, given that virtually all of its assets are managed by a single money manager affiliated with GWA, LLC.

52.     The Weiss Funds are managed to be market neutral strategies that are intended to be a replacement for fixed income strategies. According to the Company, investors have turned to the Weiss Funds to "replace fixed income."

53.     The Weiss Funds' investment objective is to generate returns typical of fixed-income while reducing a portfolio's correlation to traditional asset classes such as stocks, bonds, and cash.

54.     The Weiss Mutual Fund's filings with the Securities and Exchange Commission report the Bloomberg US Corporate Bond Index as the Weiss Mutual Fund's benchmark index. This index measures the performance of the investment grade, fixed-rate, taxable corporate bond market. The Securities and Exchange Commission ("SEC") permits mutual funds to use as benchmarks "a broad-based index that it believes best reflects the market(s) in which it invests."[2]

55.     Although the two Weiss Funds are managed through different types of investment vehicles, they are closely related. The Weiss Mutual Fund aims to replicate the Weiss Hedge Fund's positions. So, for example, when a portfolio manager places a trade, the funds' managers seek to allocate proportional shares of the trade to the Weiss Hedge Fund and Weiss Mutual Fund at the same time and at the same price. According to the Company, "[t]he key piece here is that Weiss [Mutual Fund] investors are receiving the actual economics from the trading and price movements of flagship multi-strategy [Weiss Hedge Fund]."

56.     The Plan's investment in the Weiss Funds makes up a substantial portion of the funds' total assets under management (AUM), which indicates that the Plan's assets are being used to prop up the Weiss Funds.

57.     The Weiss Mutual Fund carries an expense ratio of 2.92%, of which 1.5% is a management fee paid directly to Weiss Multi-Strategy Advisers LCC and indirectly to Defendants.

---

[2] Disclosure of Mut. Fund Performance and Portfolio Managers, Release No. 6988 (S.E.C. Release No.), 53 S.E.C. Docket 2157, 1993 WL 101994 at 6 (Apr. 6, 1993).

58.     Defendants do not disclose to participants the expense ratio or any other forms of compensation charged by the Weiss Hedge Fund to the Plaintiff or other Plan participants.

**C.     ERISA's Fiduciary Duties and Prohibited Transactions Provisions**

59.     ERISA strictly regulates the manner in which retirement plan fiduciaries must manage and administer retirement plans.

60.     ERISA's duty of loyalty requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). This requires fiduciaries to act with "an eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). Thus, "in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider *only* factors relating to the interests of plan participants and beneficiaries." U.S. Dep't of Labor, Off. of Pension and Welfare Benefit Programs (E.R.I.S.A.), Opinion Letter No. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988) (emphasis added).

61.     ERISA's duty of prudence requires fiduciaries to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  This prudence standard applies to "fiduciaries' investment decisions and disposition of assets," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) (quotation omitted), and includes "a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Moreover, prudence also requires careful attention to both investment and

administrative fees. *See* Restatement (Third) of Trs. § 90 cmt. b (Am. Law Inst. 2007) ("[C]ost-conscious management is fundamental to prudence in the investment function . . . .").

62.    ERISA supplements these fiduciary duties by "categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993). Among other things, these restrictions prohibit Plan fiduciaries from causing the Plan to engage in transactions with themselves or other fiduciaries or parties in interest. *See* 29 U.S.C. § 1106(a)-(b). Section 1106(a)(1) states, in pertinent part:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

>> (A)    sale or exchange, or leasing, of any property between the plan and a party in interest;

>> . . .

>> (C)    furnishing of goods, services, or facilities between the plan and a party in interest;

>> (D)    transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

Section 1106(b) further provides, in pertinent part:

> A fiduciary with respect to the plan shall not –

>> (1)    deal with the assets of the plan in his own interest or for his own account,

>> (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries, or

>> (3)    receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

D.     **Defendants' Unlawful Conduct**

63.     Defendants' conduct violated ERISA's fiduciary duties and prohibited transaction provisions in numerous respects, as detailed below.

1.     Defendants use the Plan to Market and Prop Up the Weiss Funds

64.     The Plan's investment in the Weiss Funds provided both substantial compensation to Defendants and an anchor client for the funds. Given the Weiss Funds' paltry market acceptance, Defendants' actions, which directed substantial amounts of the Plan's assets into the Weiss Funds, significantly increased the Weiss Funds' assets under management.

65.     Defendants have used the Plan's assets to support and prop up the Weiss Mutual Fund from its inception.

66.     The Plan first invested in the Weiss Mutual Fund in 2017, which constituted a $25 million prohibited transaction. The Weiss Mutual Fund had virtually no market acceptance when Defendants first selected it as an investment for the Plan. As of April 30, 2017, the Weiss Mutual Fund only had $7.75 million of AUM. The Plan's initial investment of $25 million in 2017 was over 300% what the entire market was willing to invest in the fund at that time.

67.     The lack of market acceptance of the Company's new fund is explained, in part, by the Weiss Mutual Fund's eye-popping cost, insufficient track record for institutional investment and generally subpar returns compared to Weiss's other fund deploying a similar strategy (the Hedge Fund).

68.     According to a 2021 Investment Management Fee Study by Callan LLC, the average fee for actively managed multi-asset class funds in 2017 was 0.52%. At the time of the Plan's initial investment in the Weiss Mutual Fund, its expense ratio was 650% more than average, or 3.4%. At the time of the Plan's original investment, approximately 1.6% of this rate was paid to a subsidiary of the Company for investment advisory services.

69.     The Weiss Mutual Fund's expense ratio also exceeds fee benchmarks tracked by the BrightScope/ICI Defined Contribution Plan Study. The highest expense ratio recorded in the most recent BrightScope/ICI for *any* investment size and asset class was 1.54%. This expense ratio fell within the 90th percentile of expense ratios BrightScope/ICI measured for the most expensive asset class (international equity) for the smallest plans (fewer than $1 million in assets).

70.     Moreover, the Weiss Mutual Fund into which the Plan's assets were transferred was substantially more expensive than the Weiss Hedge Fund which deployed a similar strategy based on the best information available.  In other words, the Plan paid substantially more in fees for the Weiss Mutual Fund which was designed to "replicate" the Weiss Hedge Fund's strategy.

71.     Further indication that the decision move of $25 million of retirement savings from the Weiss Hedge Fund to the Weiss Mutual Fund was disloyal and imprudent is that the Weiss Mutual Fund had just one calendar year's performance track-record at that time, which is an insufficient track record upon which to evaluate the abilities of the fund manager to deliver on the investment strategy they seek to follow.  For example, generally accepted industry standards for fiduciaries managing retirement assets require review of multiple years of performance history of a potential investment. If that performance history does not exist, it becomes difficult to impossible to objectively and appropriately evaluate whether the fund is suitable for the Plan's investment.

72.     Even though the Weiss Mutual Fund's core strategy was designed to replicate the Weiss Hedge Fund's strategy, Defendants had no assurance that the Weiss Mutual Fund could execute successfully given liquidity and leverage limits imposed on the Weiss Mutual Fund by the Investment Company Act of 1940.

73.     After Defendants' initial transfer of $25 million of Plan assets to the Mutual Fund, Defendants authorized and caused another $15 million transfer of assets from the Weiss Hedge Fund to the Weiss Mutual Fund in 2018, which was a prohibited transaction.

74.     Then, in 2022, Defendant George A. Weiss, in his capacity as the Plan's trustee, authorized and caused another $25 million transfer of assets from the Weiss Hedge Fund to the Weiss Mutual Fund. At the time of the 2022 transfer, the Weiss Mutual Fund had experienced an unprecedented bout of underperformance and drawdown of assets.

75.     As of March 31, 2022, the Weiss Mutual Fund had experienced year-to-date losses of -6.46%, whereas the Weiss Hedge Fund had experienced a small gain of 0.04%.

76.     By September 30, 2022, the Weiss Mutual Fund incurred its worst drawdown since its inception: a peak-to-trough decline of -21.3% from December 31, 2021 to September 30, 2022.

77.     Following Defendants' investment of $25 million in the Weiss Mutual Fund in 2022, the fund's losses accelerated. By the end of 2022, the Weiss Mutual Fund had year-to-date losses of -18.73% whereas the Weiss Hedge Fund experienced a 1.31% gain during the same period.

78.     By the beginning of 2022, Defendants had directed approximately half of all retirement savings for his current and employees into the unduly expensive and unpopular Weiss Mutual Fund. Due to the lack of interest from non-conflicted investors, the Plan investment in the Weiss Mutual Fund made up a substantial portion of its total assets under management.

79.     Defendants' investment of the Plan's assets into the Weiss Mutual Fund in 2022 caused a nearly $14 million loss to the Plan relative to the Weiss Hedge Fund for that year alone.

80.     Throughout the Class Period, Defendants caused several prohibited transactions as the Plan continued to purchase interest in the Weiss Mutual Fund and to indirectly transfer fees to the Company (or its subsidiaries/affiliates).

2.      Defendants Failed to Appropriately Construct and Monitor the Plan's Investment Portfolio, which Ultimately was Undiversified.

81.     The Plan's investments were not selected or retained as a result of a prudent and loyal investment process. Rather, investment decisions were made by Defendants on an *ad-hoc* basis in response to pressure within the Company to take actions which best supported their investment products.

82.     Based on the best information available, no other retirement plan utilizes the Weiss Funds, either individually or in combination, as the sole investments within their portfolio.

83.     According to a recent survey of defined contribution ("DC") plan investment structures conducted by Callan LLC, the average equity allocation within DC plans since 2006 has been around 68.3%. This study found that the use of "alternative" investments—like the Weiss Funds—is virtually non-existent in defined contribution (i.e., 401(k)) plans. Callan's study found that 0.1% of defined contribution assets are invested in alternative investments. Yet, 100% of the Plan's investments (all of which are defined contribution assets) were and continue to be invested in this niche category.

84.     The following chart, from a third-party investment consultant, provides the average equity allocation in defined contribution plans over the past two decades:





85.    By contrast, the Weiss Funds were designed to replace just the fixed income allocation of a retirement portfolio and do in fact track fixed income indices. The following chart—which was included in Weiss Mutual Fund's marketing materials—show that the fund generally tracks the performance of fixed income indices.



86.    During the period represented in the graph above, the S&P 500 increased by over 90%

87.     As such, the Weiss Funds are not appropriate as the only investments for an entire retirement portfolio.

88.     Defendants' anomalous and self-interested portfolio composition caused the Plan's total expenses to swell outside normal bounds and caused substantial under-performance relative to typical diversified and balanced asset allocations for retirement portfolios.

89.     Regardless of the reasons why Defendants selected and retained their in-house investments for the Plan, the resulting portfolio was inappropriately constructed for participants' individual retirement accounts or for a retirement plan as a whole. Even more problematic is that the Plan is an outlier in that it does not allow employees to choose from a menu of diversified options, rather Defendants force all their employees' retirement savings to be invest entirely in the "alternative" Weiss Funds.

90.     Because retirement saving is a long-term investment exercise, the Department of Labor ("DOL") and the SEC have actively encouraged plan sponsors and fiduciaries to include a substantial allocation to equity to ensure adequate capital appreciation for retirees. Over the long-run, the higher relative risk associated with equity and similar asset classes is necessary to grow retirement savings in excess of inflation.

91.     In recognition of this basic economic principle, the DOL has provided a safe-harbor for plan sponsors and fiduciaries who—unlike Defendants—direct participants' assets into a "qualified" default investment option that contains a mix of asset classes. *See* Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452-01 (Oct. 24, 2007) (the "QDIA Safe Harbor").

92.     In passing the QDIA Safe Harbor, the DOL considered whether it was appropriate for participants' retirement savings to be invested by default in investments like the Weiss Funds

that were designed to provide "bond-like returns without the volatility associated with bonds." *Id.* at 60462. The DOL concluded that, while such investments may "play an important role as a component of a diversified portfolio," they "will not over the long-term produce rates of return as favorable as those generated" by diversified portfolios correlated with traditional asset classes. *Id.* at 60463.

93.    Plan sponsors most typically utilize "target date funds" to avail themselves of the QDIA Safe Harbor and provide participants diversified portfolios correlated with traditional asset classes. Target date funds are "set it and forget it" investment options that reallocate their investment allocation from riskier to more conservative as the funds' "target date" approaches. The target date is generally the date when the investor expects to retire.

94.    Target date funds are designed to be stand-alone investments in participants' plan accounts because they provide direct exposure to a diverse array of asset classes and automatically rebalance to reflect an appropriate allocation given the participants' respective age.

95.    The dispersion of asset allocations within target date fund complexes reveals that the Plan's investment allocation—which consisted entirely of an alternative investment strategy that is intended to replace fixed income allocations within a portfolio—is highly anomalous. The following chart from a Morningstar 2022 Survey of Target Date Funds illustrates the average equity allocation found amongst target date funds and vintages.



96.    This study reveals that—regardless of investors' expected retirement age—investment professionals deem it prudent to include substantial exposure to equity in participants' portfolios. The amount of equity depends on the participants' age and rolls down over time as normal retirement age approaches.

97.    Thus, while non-conflicted plan fiduciaries routinely conclude that it is appropriate to expose approximately 50% to 90% of a participant's retirement savings to equity, Defendants utilized an affiliated alternative investment designed to be a replacement for a fixed income component of a portfolio.

98.    Given Plaintiff's age and time from normal retirement age, the typical equity exposure in her account would have been 60% to 70%. Yet Defendants exposed her account only to an affiliated alternative investment designed to be a replacement for a fixed income component of a portfolio.

99.    The following tables compare the performance of the Weiss Mutual Fund (ticker: WEISX) with two widely used asset allocation funds, the Vanguard Wellington Fund (ticker:

VWENX) and Vanguard Balanced Index Fund (ticker: VBIAX). VWENX currently has $105 billion assets under management and VBIAX has nearly $50 billion. Both Vanguard funds allocate their assets between equity, fixed income, and cash equivalents at ranges typically found in retirement plans (e.g., 60% to 70% equity).

| Trailing Annualized Returns | As of 12/31/2017 | | |
|---|---|---|---|
| | WEISX | VWENX | VBIAX |
| 1 Year | 7.59% | 14.82% | 13.9% |
| 3 Year | N/A | 8.50% | 7.6% |
| 5 Year | N/A | 18.91% | 10.1% |

| Trailing Annualized Returns | As of 12/31/2022 | | |
|---|---|---|---|
| | WEISX | VWENX | VBIAX |
| 1 Year | -18.48% | -14.26% | -16.9% |
| 3 Year | -1.57% | 4.17% | 3.4% |
| 5 Year | 1.83% | 6.02% | 5.5% |

100.    The same adverse outcome is revealed when comparing the performance of WEISX to the spectrum of asset allocations typically used within participants' 401(k) plan accounts, as measured using target date funds. The Vanguard Target Retirement 2060 Fund (ticker: VTTSX) is a target date fund that allocates approximately 90% of its assets to equity and is intended for participants that will retire around 2060. The Vanguard Target Retirement 2030 Fund (ticker: VTHRX) is a target date fund that allocates approximately 65% of its assets to equity and is intended for participants that will retire around 2030. And the Vanguard Target Retirement Income Fund (ticker: VTINX) allocates approximately 30% of its assets to equity and is intended for participants that are in retirement.

| Trailing Annualized Returns | As of 12/31/2017 | | | |
|---|---|---|---|---|
| | WEISX | VTTSX | VTHRX | VTINX |
| 1 Year | 7.59% | 21.36% | 17.52% | 8.47% |
| 3 Year | N/A | 9.10% | 7.85% | 4.46% |
| 5 Year | N/A | 11.59% | 10.13% | 4.95% |

| Trailing Annualized Returns | As of 12/31/2022 | | | |
|---|---|---|---|---|
| | WEISX | VTTSX | VTHRX | VTINX |
| 1 Year | -18.48% | -17.07% | -15.71% | -12.44% |
| 3 Year | -1.57% | 4.29% | 2.66% | 0.73% |
| 5 Year | 1.83% | 5.58% | 4.35% | 2.59% |

101.    As the above tables reveal, traditional asset allocation funds have substantially out-performed the Weiss Mutual Fund while having far more market acceptance and adequate track-records for inclusion within a 401(k) plan.

102.    Defendants failed to consider a course of action that would align Plaintiff's or the Plan's asset allocation with well-accepted industry standards.

103.    Had Defendants invested Plaintiff's Plan account consistent with industry standards for a participant her age, her retirement account would have grown at least 3% more *each year*.

104.    In summary, Defendants imprudently failed to give appropriate consideration to facts and circumstances that they knew or should have known are relevant to the particular investment or investment course of action involved. *See* 29 C.F.R. § 2550.404a-1(b)(1)(i). Among other things:

a.    Defendants did not consider that the Plan is a long-term investment vehicle that serves the retirement needs of an array of Plan participants of varying ages.

b.    Defendants did not consider whether the Weiss Funds provided a balanced or diversified mix of asset classes for each of the participants in the Plan, including Plaintiff.

c.    Defendants did not consider whether the Weiss Funds provided a balanced or diversified mix of asset classes for the Plan as a whole.

d.    Defendants failed to appropriately consider that the Weiss Funds were not designed to serve as the lone investments within a portfolio and were designed solely to act as a replacement to a fixed income allocation.

e.    Defendants also failed to give appropriate consideration to "the circumstances and requirements of the trust *and its beneficiaries*," Restatement (Third) of Trs. § 90 cmt. d (emphasis added), including participants' need for asset growth and accumulation, by concentrating participants' assets in proprietary products.

105.    The Weiss Funds Defendants selected for the Plan was not merely inappropriate for the Plan's purpose, but also a poor choice for their intended purpose. Namely, the Weiss Mutual Fund was excessively expensive, untested, underperforming, and was not generally-accepted in the marketplace or among other fiduciaries.

106.    Further, Defendants kept control of the investment allocation for all retirement accounts in the Plan and directed those accounts entirely into the Weiss Funds. Had the Plan offered a diversified array of low-cost investments that reflected the ages of Plan participants, the Plan as a whole and individual participants would have achieved outcomes better aligned with their retirement needs.

107.    As a result of Defendants' imprudent and disloyal conduct and the prohibited investment of the Plan's assets in affiliated funds, Plaintiff and other Plan participants have suffered substantial losses to their retirement savings and paid excessive and unreasonable fees for their Plan investments.

## V.    CLASS ALLEGATIONS

108.    Plaintiff brings this action derivatively on behalf of the Plan pursuant to 29 U.S.C.

§§ 1109(a) and 1132(a)(2)-(3), and is qualified and adequate to do so as a Plan participant.

109.    Plaintiff also brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of the following Class:[3]

> All participants and beneficiaries in the GWA, LLC 401(K) Profit Sharing Plan
> (F/K/A the George Weiss Associates, Inc. 401(K) Profit Sharing Plan) at any time
> on or after July 24, 2017, excluding any individual defendants and any other
> persons with responsibility for the Plan's investment or administrative functions.

110.    Class certification is appropriate under Federal Rule of Civil Procedure 23(a).

111.    **Numerosity**. The Class satisfies the numerosity requirement because it is

composed of hundreds of persons. The Plan has at least 187 participants. The number of Class

members is so large that joinder of all its members is impracticable.

112.    **Commonality.** This case presents numerous common questions of law and fact,

including:

> a)    Whether Defendants were and are ERISA fiduciaries with respect to the Plan;
>
> b)    Whether Defendants breached their ERISA fiduciary duties under 29 U.S.C. §
>       1104 by engaging in the conduct described herein;
>
> c)    Whether the Defendants caused the Plan to engage in prohibited transactions
>       in violation of 29 U.S.C. § 1106;
>
> d)    The proper form of equitable and injunctive relief; and
>
> e)    The proper measure of monetary relief.

113.    **Typicality.** Plaintiff's claims are typical of the Class members' claims. Like other

Class members, Plaintiff participated in the Plan and suffered harm as a result of Defendants'

---

[3] Plaintiff reserves the right to propose other or additional classes or subclasses in her
motion for class certification or subsequent pleadings in this action.

mismanagement of the Plan. Defendants treated Plaintiff consistently with other Class members with respect to the Plan, and their unlawful conduct affected all Plan participants similarly. Moreover, to the extent that Plaintiff seeks relief on behalf of the Plan pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), her claims are not only typical of, but the same as, a claim brought by any other Class member on behalf of the Plan.

114.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class, and her interests are aligned with the Class that she seeks to represent. Plaintiff is committed to the vigorous representation of the Class and has retained counsel experienced in class action and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with the interests of the Class that would impair or impede her ability to represent the Class.

115.    Class certification is also appropriate under Federal Rule of Civil Procedure 23(b).

(a)    **Rule 23(b)(1) requirements.** As an ERISA breach of fiduciary duty action, this action is a classic Rule 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (i) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants, and (ii) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

(b)    **Rule 23(b)(2) requirements**. Additionally or alternatively, class certification is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

(c)    **Rule 23(b)(3) requirements**. Additionally or alternatively, this action is suitable to proceed as a class action under Rule 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter. Moreover, the amount of each Class member's personal losses is relatively small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any Class member on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices, and management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## VI.    CAUSES OF ACTION

### COUNT I
**Breaches of Fiduciary Duties in Violation of ERISA § 404, 29 U.S.C. § 1104
(against George A. Weiss and GWA, LLC)**

116.    Plaintiff restates and incorporates the allegations of the preceding paragraphs of this Complaint as if set forth fully herein.

117.    Defendants were fiduciaries of the Plan during the Class Period, and were subject to ERISA's fiduciary duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A) and (B) with respect to decisions relating to the Plan's investments and expenses.

118.    As fiduciaries, Defendants were also required to diversify the investments of the Plan. 29 U.S.C. § 1104(a)(1)(C). This obligation includes a duty to diversify the Plan's investments both between asset classes as well as within asset classes.

119.    Defendants breached their fiduciary duties as described herein, including: (1) investing in and maintaining an excessive concentration to Weiss Funds (the sole Plan investments), for self-interested business reasons; (2) failing to invest in and maintain a balanced and diversified asset allocation consistent with modern portfolio theory and well accepted retirement plan standards (or alternatively, a diversified menu of investment options); (3) failing to invest sufficiently in capital appreciation asset classes for participants who were far (or very far) from retirement age; (3) failing to consider the age demographics of Plan participants and their need to grow their retirement savings through assets and strategies aimed at capital appreciation and growth; (4) indulging conflicts of interest when investing in inferior proprietary Weiss fund and failing to properly monitor those funds (5) failing to adequately consider concentration risk and whether investing in only Weiss Funds was appropriate for a large portfolio of retirement savings; (6) failing to adequately consider alternatives to the Weiss Funds and alternative strategies to the fixed income-based strategy used by the Weiss Funds; (7) failing to monitor the portfolio strategy of the Plan as a whole and eliminate the excessive allocation to investments deploying a fixed income alternative strategy;  (8) failing to monitor and control the costs borne by the Plan through its investments; (9) engaging in a broken and conflicted fiduciary process that benefitted GWA at the expense of Plan participants and beneficiaries; (10) improperly giving preferential treatment to GWA investment products and services; and (11) causing or allowing the Plan to engage in prohibited transactions.

120.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, the Plan and its participants and beneficiaries have suffered tens of millions of dollars of losses.

121.    Pursuant to 29 U.S.C. § 1109(a), §1132(a)(2) and §1132(a)(3), Defendants are jointly and severally liable for all losses to the Plan resulting from these fiduciary breaches, and Defendants must restore all profits they made (directly or through affiliates) from the Plan's investment in GWA affiliated funds. In addition, Defendants are liable for other equitable relief as set forth in Plaintiff's Prayer for Relief.

**Count II**
**Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)**
**(against George A. Weiss and GWA, LLC)**

122.    Plaintiff restates and incorporates the allegations of the preceding paragraphs of this Complaint as if set forth fully herein.

123.    GWA and its affiliates, including Weiss Multi-Strategy Advisers LLC, and Weiss Multi-Strategy Partners (Cayman) Ltd are parties in interest to the Plan as defined in 29 U.S.C. § 1002(14).

124.    Defendants caused the Plan to engage in multiple prohibited transactions during the Class Period with GWA and its affiliates in violation of 29 U.S.C. § 1106(a), including:

- the Plan's numerous direct or indirect purchases of shares ("property") in Weiss Multi-Strategy Partners (Cayman) Ltd. and Weiss Alternative Multi-Strategy Fund in violation of 29 U.S.C. §§ 1106(a)(1)(A).

- the Company's providing investment services to the Plan through its affiliates in violation of 29 U.S.C. §§ 1106(a)(1)(C)

- the transfer of the Plan's assets to Weiss Multi-Strategy Advisers LLC and GWA, LLC for fees paid for investment in the Weiss Funds in violation of 29 U.S.C. §1106(a)(1)(D).

125.    Defendants knew or should have known of the existence and unlawfulness of such party in interest transactions.

126.    Pursuant to 29 U.S.C. § 1109(a), §1132(a)(2) and §1132(a)(3), Defendants are jointly and severally liable for all losses to the Plan resulting from these prohibited transactions, and Defendants must restore all profits that they made (directly or through affiliates) through use of the Plan's assets or on account of these prohibited transactions. In addition, Defendants are liable for other equitable relief as set forth in Plaintiff's Prayer for Relief.

**Count III**
**Prohibited Transactions in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)**
**(against George A. Weiss and GWA, LLC)**

127.    Plaintiff restates and incorporates the allegations of the preceding paragraphs of this Complaint as if set forth fully herein.

128.    Defendants were fiduciaries of the Plan during the Class Period.

129.    Fiduciary self-dealing is prohibited by 29 U.S.C. § 1106(b). Among other things, a fiduciary may not "deal with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1), and may not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

130.    Defendants violated 29 U.S.C. § 1106(b) because: (1) Defendants made decisions about the investment of Plan assets in ways that benefitted themselves or were in their own self-interest; (2) Defendants dealt with the Plan in their own interest in connection with the GWA Funds; (3) Defendants received fees or other money from Plan assets; and (4) George A. Weiss was an executive of the Company who was compensated by GWA and/or its affiliates and who stood to gain from the Plan's investment in the Weiss Funds and from the prohibited transactions described herein.

131.    Pursuant to 29 U.S.C. § 1109(a), §1132(a)(2) and §1132(a)(3), Defendants are jointly and severally liable for all losses to the Plan resulting from these prohibited transactions, and Defendants must restore all profits that they made (directly or through affiliates) through use of the Plan's assets or on account of these prohibited transactions. In addition, Defendants are liable for other equitable relief as set forth in Plaintiff's Prayer for Relief.

**Count IV**
**Co-Fiduciary Liability Under ERISA § 405**
**(against George A. Weiss and GWA, LLC)**

132.    Pursuant to Fed. R. Civ. P. 10(c), Plaintiff hereby re-alleges and incorporates by reference the allegations of the preceding paragraphs.

133.    As alleged above, during the Class Period, Defendants were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

134.    Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary, in addition to any liability which the fiduciary may have had under any other provision of ERISA, if the fiduciary knowingly participates in a breach of fiduciary duty by another fiduciary.

135.    Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3), imposes liability on a fiduciary, in addition to any liability which the fiduciary may have had under any other provision of ERISA, if the fiduciary knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

136.    George Weiss had knowledge of all the facts and circumstances underlying the breaches of fiduciary duty by other Plan fiduciaries such as GWA, LLC. Specifically, he knew that the Plan was invested in GWA, LLC affiliated investments in order to benefit the Company. He knew that the Plan's assets were not invested consistent with industry standards for a balanced and

diversified retirement portfolio because he knew that the Weiss Funds were both designed to replace a fixed income portfolio (rather than a balanced portfolio appropriate for participants who are years or decades away from retirement). George Weiss knew that the Plan purchased shares or interest in the Weiss Funds throughout the Class Period and that the Weiss Funds charged investment fees which resulted in a direct or indirect transfer of the Plan's assets to the Company and/or its affiliates.  Despite this knowledge, George Weiss participated in the breaches by not using his fiduciary power as the Plan's trustee to prevent the investment of the Plan's assets in Weiss Funds. After these breaches, he took no steps to remedy those breaches.

137.    GWA, LLC had knowledge of all the facts and circumstances underlying the breaches of fiduciary duty by other Plan fiduciaries such as George Weiss. Specifically, the Company through its officers, executives, employees, and counsel knew that the Plan was almost entirely invested in GWA, LLC affiliated investments in order to benefit the Company. They knew that the Plan's asset allocation was not consistent with a balanced or diversified retirement portfolio because the Company's employees managed the Weiss Funds and thus were intimately aware of the purpose and design of those funds: to replace a fixed income portfolio rather than replace an entire retirement portfolio including a substantial equity allocation. The Company knew that the Plan purchased shares or interest in the Weiss Funds throughout the Class Period and that the Weiss Funds charged investment fees which resulted in a direct or indirect transfer of the Plan's assets to the Company and/or its affiliates.  Despite this knowledge, GWA, LLC participated in the fiduciary breaches and prohibited transactions George Weiss caused by not using GWA's fiduciary power to prevent the investment of virtually all the Plan's assets in Weiss Funds. Thereafter, GWA, LLC took no steps to remedy these breaches or prohibited transactions.

138.    Pursuant to 29 U.S.C. § 1109(a), §1132(a)(2) and §1132(a)(3), Defendants are jointly and severally liable for all losses to the Plan resulting from these prohibited transactions, and Defendants must restore all profits that they made (directly or through affiliates) through use of the Plan's assets or on account of these prohibited transactions. In addition, Defendants are liable for other equitable relief as set forth in Plaintiff's Prayer for Relief.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Plan and the Class, respectfully requests the following relief:

a)  A declaration that Defendants breached their fiduciary duties and caused the Plan to engage in prohibited transactions in the manner described herein;

b)  An order compelling Defendants to make good to the Plan all losses resulting from the fiduciary breaches and prohibited transactions described herein;

c)  An order compelling Defendants to restore all profits that they made (directly or through affiliates) through the use of the Plan's assets or on account of the fiduciary breaches and prohibited transactions described herein;

d)  An order requiring Defendants to provide all accountings necessary to determine the profits they made (directly or through affiliates) through the use of the Plan's assets or on account of the fiduciary breaches and prohibited transactions described herein;

e)  Equitable liens on all ill-gotten profits obtained by Defendants;

f)  An order granting equitable restitution and/or other appropriate equitable monetary relief including, but not limited to, imposition of a constructive trust on all assets of the Plan transferred to Defendants or their affiliates, or a surcharge to prevent unjust enrichment from unlawful conduct involving the Plan;

g)  An injunction removing each of the Defendants from their role as a Plan fiduciary given their unlawful conduct as described herein;

h)  An order appointing an independent fiduciary to manage the assets of the Plan;

i)  An injunction requiring all Plan fiduciaries to comply with ERISA on a going-forward basis;

j)  Other equitable relief to address Defendants' unlawful practices and enforce the provisions of ERISA as may be appropriate;

k)  An award of pre-judgment interest on any amounts Defendants are ordered to pay in this action;

l)  An award of attorneys' fees, expenses and/or taxable costs, as provided by 29 U.S.C. § 1132(g), the common fund doctrine, and/or other applicable authority;

m)  An order that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure;

n)  Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel; and

o)  Such other relief as the Court deems just and proper.

Dated: July 24, 2023

Respectfully submitted,

*/s/Michelle C. Yau*
Michelle C. Yau (Federal Bar #: ct31491)
Daniel R. Sutter (*pro hac vice* application
forthcoming)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Kai H. Richter (*pro hac vice* application
forthcoming)
Caroline E. Bressman (*pro hac vice*
application forthcoming)
**Cohen Milstein Sellers & Toll PLLC**
400 South 4th Street ● #401-27
Minneapolis, MN 55415
(202) 408-4600
krichter@cohenmilstein.com
cbressman@cohenmilstein.com

*Attorneys for Beth Andrew-Berry*