UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BETH ANDREW-BERRY, individually and on behalf of all others similarly situated,<br>    *Plaintiff*,<br><br>v.<br><br>GEORGE A WEISS and GWA,LLC,<br>    *Defendants*. | Case No. 3:23-cv-978 (OAW) |

**RULING ON PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**THIS ACTION** is before the court upon Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 63, and Plaintiff's Motion for Attorney Fees, Expense Reimbursements, and Class Representative Service Award, ECF No. 69.  Both motions are unopposed.  The court has reviewed both motions and the written record, and in accordance with Federal Rule of Civil Procedure 23, the court also held a fairness hearing on September 11, 2025, at which all parties were represented by competent counsel.  For the reasons discussed herein, both motions are **GRANTED.**

**I.   BACKGROUND**

Plaintiff, who is the former Head of Human Resources for Defendant GWA, LLC, filed this class action over two years ago pursuant to the Employee Retirement Income Security Act ("ERISA").  Broadly speaking, she alleged that Defendants had mismanaged the assets of the company's retirement plan (the "Plan").  After significant litigation in several jurisdictions, and with the assistance of a competent mediator, the parties agreed to a settlement (the "Agreement"), the terms of which the court preliminarily approved on

1

May 30, 2025.  *See* ECF No. 59.  The parties now ask the court to issue final approval of the Agreement and the proposed fees, costs, expenses, and service award.

## I.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23(e)(2), a district court must approve of a proposed settlement agreement that will result in the dismissal of a class action.  Final approval of a settlement is permissible "only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ."  Fed. R. Civ. P. 23(e)(2).  This process protects the interests of absentee class members from collusive agreements.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir. 1987) (noting that Rule 23(e) "places the court in the role of protector of the rights of the class when such a settlement is reached and attorneys' fees are awarded") (internal citation omitted).

To determine whether a settlement is fair, reasonable, and adequate, the district court considers both its procedural fairness (by examining the "negotiating process leading up to the settlement,") and its substantive fairness (by scrutinizing the agreed-upon terms).  *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009)) (internal quotations marks omitted).  Rule 23(e)(2) requires the court to find that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In this circuit, district courts also consider the following nine factors to evaluate the substantive fairness of a proposed agreement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d. Cir. 1974) (internal citations omitted).

## II.  DISCUSSION

As set forth below, the court finds that the proposed settlement is fair, reasonable, and adequate. The court therefore certifies the settlement class and approves the proposed settlement.

### A. Certification of Settlement Class

The court preliminarily certified a class comprised of all participants and beneficiaries of the Plan[1] from July 24, 2017, to the Effective Date of Settlement (as that term is defined in the Agreement), excluding Defendant George A. Weiss and any of his relatives, heirs, or trusts for which he and/or his family members are beneficiaries or trustees. ECF No. 59 at 4–8. In preliminarily certifying the class, the court discussed in detail all the requirements of Rule 23(a) and (b). *Id.* There has been no material change to the relevant factors since that discussion, and so the court will not repeat it here. The

---

[1] Specifically, the GWA, LLC 401(k) Profit Sharing Plan (formally known as the George Weiss Associates, Inc. 401(k) Profit Sharing Plan).

3

court will note, though, that numerosity was the one factor that necessarily relied upon incomplete information, and the final number of class members is approximately 50% greater than anticipated at the time of preliminary certification, and so the support for finding numerosity to be satisfied is only all the stronger.  And the court recognizes that the named plaintiff clearly has protected the interests of the class, as will be discussed in more detail infra.  Thus, finding that all the requirements of Rule 23(a) and 23(b)(1) still are satisfied, and that Plaintiff and class counsel have represented the class fairly and adequately, the court hereby certifies the class as it is defined in the Agreement.

### B. Procedural Fairness

The court again relies upon its previous findings in concluding again that the Agreement resulted from a procedurally fair process.  *Id.* at 9–10.  The parties used the services of JAMS, a reputable arbitration firm, in negotiating the Agreement, and all parties have been represented by competent counsel throughout the action.  The court also finds it relevant that at the fairness hearing, class counsel specifically emphasized its efforts to exclude Defendant Weiss and his beneficiaries from the negotiated relief, though his investment in the Plan was greater than any other participant's.  This fact is further indication that negotiations were not collusive and that class counsel negotiated in the class's best interests.  The court also notes the report from an independent fiduciary of Defendants' selection, which concludes that the Agreement is "no less favorable to the Plan than comparable arms-length" agreements by unrelated parties in similar circumstances, and that there is no other agreement or arrangement that would benefit any interested party.  ECF No. 65-1 at 2–3.  Accordingly, the court reiterates its previous finding that the Agreement is procedurally fair.

C. <u>**Substantive Fairness**</u>

Briefly, the Agreement requires Defendants to pay $7,900,000.00 into a fund, which first shall satisfy costs and fees incurred in bringing this action (including attorneys' fees and an award for the class representative), after which the entire remainder will be distributed to the individual class members on a pro rata basis.[2]  The class members shall be required to execute a release of claims.

Again, the court sees no reason to disturb its preliminary finding that the Agreement is substantively fair.  ECF No. 59 at 10–11.  Given the complexity of ERISA cases, the fact that this action had not yet progressed past the dismissal phase when the parties agreed to settle, and the inherent uncertainty of litigation, the terms of the Agreement clearly are reasonable.  Now, though, the court also notes that the Agreement and the release of claims were reviewed by the independent fiduciary, whose opinion is that both are reasonable.  ECF No. 65-1 at 2–3.  The court also notes that while the final size of the class is much larger than previously expected, each member's average recovery of approximately $26,000 remains significant, particularly considering that Defendants both separately declared bankruptcy.

Furthermore, there has been no objection from any class member to any part of the Agreement itself.  The court considers this to be particularly significant given that as of the fairness hearing, only one member of the class could not be reached.  Analytics Consulting LLC, who was retained as the settlement administrator, was able to use its resources to locate current mailing addresses for over 99% of the class.  The court previously approved the parties' proposal to reach the class via the United States Postal

---

[2] Each member's individual recovery will be determined by application of a formula that reflects each individual's relative level of investment in the Plan during the relevant period.

5

Service, and no new information leads the court to conclude that there was any deficiency in the form or means of notice. To the contrary, the near-perfect success rate is strong indication that this was the best notice practicable under the circumstances and was sufficient to satisfy the requirements of Rule 23.

Moreover, class counsel noted at the hearing that this class was particularly engaged, as evidenced by the number of questions and comments fielded by the settlement administrator (60 total as of August 22, 2025, *see* ECF No. 76 ¶ 5), and the number of individuals who elected to rollover their recovery into another qualified account (123 as of August 22, 2025, *see id.* ¶ 7). That a rollover was offered as a means of distribution also shows the effectiveness of the proposed method of distribution to the class. And in the unlikely event any individual who did not elect a rollover neglects to collect or cash the check that will be issued to them, the surplus funds will be donated to a non-profit organization. Thus, the Agreement contemplates all eventualities in its plan for distribution.

In response to the court's inquiry at the fairness hearing, class counsel confirmed that this particular class also is relatively sophisticated, being comprised of the professional staff of a former hedge fund. Yet no member of the class save Plaintiff herself appeared at the fairness hearing,[3] from which the court infers general satisfaction with the Agreement. That not one member of this relatively engaged and sophisticated class objected to the settlement terms shows as close to unanimous approval as one can hope for. For all these reasons, the court reiterates it conclusion that both procedural and substantive fairness have been satisfied, and grants final approval of the Agreement.

---

[3] The court canvassed the courtroom to be sure, though the gallery was empty throughout the hearing.

6

### D. Attorneys' Fees, Costs, Service Award

There also was no objection to the litigation costs or administrative expenses requested. The former includes the fees incurred in bringing this action (perhaps most notably the cost of retaining bankruptcy attorneys) and totals $193,368.37. The latter includes fees for the settlement administrator, escrow, recordkeeping, and the independent fiduciary and totals $43,497.57. The court finds these requests to be reasonable given the size of the settlement amount relative to the class and the complexity of the case and therefore approves their satisfaction from the settlement fund.

Nor has any objection been lodged with respect to the proposed service award of $45,000 to Plaintiff. There is little guidance on how to assess the reasonableness of a service award, and in fact the United States Court of Appeals for the Second Circuit has stated that "[s]ervice awards are likely impermissible under Supreme Court precedent." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721 (2d Cir. 2023) (citing *Trustees v. Greenough*, 105 U.S. 527, 537, 26 L.Ed. 1157 (1881)). The Second Circuit has not invalidated service awards entirely, though, noting that "practice and usage seem to have superseded Greenough (if that is possible)." *Id.* Given the nebulous space in which service awards exist, though, there is little guidance on how to determine if they are reasonable. Review of other cases shows that while the total amount requested here is not completely out of line with other cases in this circuit, it must be acknowledged that the proposed service award certainly is more generous than is usual, and often a service award is split between several named plaintiffs, whereas here the entire amount would go to one person. *See, e.g. Volino v. Progressive Cas. Ins. Co.*, No. 21 CIV. 6243 (LGS), 2025 WL 871602, at *3 (S.D.N.Y. Mar. 20, 2025) (reducing service awards to seven

named plaintiffs from $70,000 total to $28,300 total); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (approving a service award of $10,000 to one named plaintiff); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009) (awarding $5,000 to each of three named plaintiffs); *McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (approving service awards to five named plaintiffs ranging from $25,000 to $35,000 each); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (awarding a total of $97,500 to seven class representatives); *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (awarding four class representative $10,000 each). *But cf. Chen-Oster v. Goldman Sachs & Co.*, No. 10 CIV. 6950 (AT) (RWL), 2023 WL 7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (approving awards of $250,000 each to four named plaintiffs); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (awarding eleven named plaintiffs $50,000 each).

Still, though, the court finds the proposed award warranted given that this was not a case where Plaintiff was solicited to act as a named plaintiff. To the contrary, Plaintiff herself discovered the alleged irregularities in the Plan's administration (at the company where she was employed) and sought to resolve those issues short of legal action before securing competent counsel to take this case on contingency. She also apparently advised class counsel throughout litigation insofar as she was uniquely situated to know where essential information could be found. The court finds this to be inordinate involvement for a named plaintiff, and essential involvement given the subsequent dissolution of the company. It appears clear to the court that absent Plaintiff's dedication, no one in the class would have gotten any relief. Accordingly, the court approves the $45,000 service award as appropriate and proportional to the named plaintiff's efforts.

8

There was one objection to the amount of attorneys' fees requested. Class counsel seeks an award of one-third of the total settlement amount, which amounts to $2,633,333.33. One class member argues that this is nearly twice the actual billable hours and represents an excessive 89.4% return on counsel's investment. *See generally* ECF No. 75-1. He characterizes the requested fees as "victimizing" the class a second time. *Id.* at 1. The objector argues that class counsel's professed expertise in ERISA class actions is precisely what makes the firm unlikely to take on a case that would not be profitable to them, and so the very fact that they agreed to represent this class is indication that the risks were not so high to begin with. He proposes instead to award class counsel their total billable hours plus $450,000, which represents, by his calculation, a much more "ethical" 30% return on investment. *Id.* at 2.

The court appreciates the enormity of the figures presented in this action, and it must be recognized that under the terms of the Agreement, the amount awarded in attorneys' fees directly and negatively affects each class member's recovery. Reduction of attorneys' fees necessarily would result in a greater portion of the settlement fund remaining after fees and expenses are paid, and thus there would be a bigger pie to be equitably divided amongst the class members. But the court strongly disagrees with the implication that class counsel has taken advantage of the class or that its request is somehow predatory. It is not at all uncommon for firms that litigate class actions, and ERISA class actions in particular, to seek a third of the recovery in fees. *See, e.g., City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG,* No. 17 CIV. 10014 (LGS), 2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) (asking for 30% of the total judgment in attorneys' fees); *In re Sadia S.A. Sec. Litig.*, No. 08 CIV. 9528 SAS, 2011 WL 6825235

(S.D.N.Y. Dec. 28, 2011) (asking for an award of one-third of the total judgment in attorneys' fees); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (asking for 33.33% of the total recovery in attorneys' fees). Thus, the court rejects the assertion that class counsel's request "victimizes" the class further.

Furthermore, the objector's suggestion of a modest $450,000 over class counsel's expenditures has no basis in the law. While a 30% "return on investment" likely makes sense to an investor, class counsel argued at the fairness hearing, and the court agrees, that investment principals are fundamentally inapposite to the issue of attorneys' fees in class actions. In the first instance, an ERISA class action is not a means of making money or funding future innovations. It is a means of recovering amounts workers would have realized absent past violations of federal law. Fundamentally, representing a class in an ERISA action is not an "investment," but a feature of a complex and comprehensive scheme for ensuring employers do not take advantage of their employees. The fact that Congress provided for private attorneys to earn money through such representation shows how important a role it is.

Furthermore, while traditional investments generate what is often referred to as "passive income," attorneys' fees reflect significant activity and labor. In this way they are more akin to executive compensation than investments, and it is not uncommon for executives to negotiate bonuses equal to 100% of their salary should they meet certain benchmarks. Moreover, the human resources expended in class actions are substantial, and while those expenditures are reflected in the lawyers' billable hours, those expenditures are not compensated until the end of litigation, if at all, and they are only compensated once. This is in contrast to investments, which often generate passive

income quickly, regularly, and repeatedly.  Most importantly, though, as class counsel pointed out at the fairness hearing, these expenditures are made when it is not at all certain that they will be reimbursed.  There are many reasons why a case might result in no recovery: the sued parties could turn out to be insolvent and unable to satisfy any judgment; the case may simply end up being weak on the merits, which counsel might only realize after discovery; there may be a novel question of law lurking that could impact the merits of a case significantly; even routine questions often have no clear answer (such as how to value a plan's losses where its fiduciaries invested plan assets imprudently, which generally requires a battle of experts); and an unfavorable ruling could make success much more difficult or even impossible.  For all these reasons, the court finds the risk to class counsel was not overstated, and declines to adopt the objector's proposed award.

With the foregoing in mind, the court finds that the request for one-third of the total settlement amount is reasonable.  "What constitutes a reasonable fee is properly committed to the sound discretion of the district court, and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted).  However, the district court is expected to consider the following in exercising that discretion: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F.Supp. 160, 163 (S.D.N.Y.1989)) (alteration in original).

Provided these factors all are considered, district courts may use either of two methods to analyze a request for attorneys' fees. The "lodestar" method calculates a reasonable hourly rate multiplied by a reasonable number of hours worked on the case and then adjusts the sum by a "multiplier" that reflects the specifics of the case and the quality of representation. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347–48 (S.D.N.Y. 2014)). The "percentage of fund" method is the trend in this circuit, however, and allows a district court to award a reasonable percentage of the settlement fund. *Id.* at 348. The benefit to the latter method is that it aligns counsel's interests directly with the clients' in that the greater the recovery for the class, the greater the recovery for class counsel. *Id.* It also incentivizes earlier resolution of cases and disincentivizes inflating billable hours. *Id.*

The court already has discussed the third and fifth factors noted supra: risk and the amount requested in relation to the settlement. The court again notes that the request for one-third the settlement amount is not unheard of, and adds that there was a unique risk presented in this action in that both defendants declared bankruptcy.

With respect to the quality of representation, it is notable that even the one objector does not take issue with how class counsel litigated this action, or even their hourly rates and billable hours. And the court acknowledges class counsel's diligent attention to this case, which kept the court apprised of developments in related bankruptcy proceedings, *see e.g.,* ECF No. 55, and sought to ensure as quick a resolution of this matter as possible, *see, e.g.,* ECF No. 57. The court recognizes that a motion to dismiss already was briefed when the settlement was reached, but not yet ruled on. This means that class counsel had to devote resources to completing discovery and drafting a response

to the pending motion, just as it would have had to do for a larger case, but that the firm did not delay the settlement unduly, as it might have done. It would not have been entirely unreasonable to wait until the motion to dismiss had been disposed of and to log additional hours for subsequent work. But given the circumstances of the defendants, it seems unlikely that further litigation would have resulted in a larger recovery. The court finds it counterproductive to penalize a firm for securing a fair result more quickly.

Finally, the court finds it important to emphasize class counsel's point that this particular case was much smaller than the firm's usual fare when measured by the Plan's asserts, and therefore likely would yield a much smaller judgment than the firm was used to seeing when it was successful. *See, e.g., In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517, 520 (S.D.N.Y. 2015), aff'd sub nom. *DeValerio v. Olinski*, 673 F. App'x 87 (2d Cir. 2016) (dealing with a $346 million judgment); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 161 (S.D.N.Y. 2007) (dealing with a $125 million judgment); *In re Sadia*, 2011 WL 6825235 (dealing with a $27 million judgment). The court appreciates the firm's willingness to take on a case with relatively modest stakes (and thus relatively modest potential fees), and finds it in the interest of justice and the public interest to consider when awarding attorneys' fees the importance of encouraging larger firms with specific expertise to take on cases that might not present a substantial money-making opportunity, but that stand to correct an injustice inflicted upon rank-and-file workers. *See Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) ("Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest."); *Goldberger*, 209 F.3d at 51 ("There is also

commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."). For these reasons, the court grants the requested award of attorneys' fees.

### III. CONCLUSION

Accordingly, it is hereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 63, hereby is **GRANTED.**
   a. The terms of the settlement agreement are approved as discussed herein.
   b. Distribution of the settlement funds as described in the settlement agreement hereby is approved.
   c. The settlement class hereby is certified as discussed herein.
2. Plaintiff's Motion for Attorney Fees, Expense Reimbursements, and Class Representative Service Award, ECF No. 69, hereby is **GRANTED.**
   a. Class counsel hereby is awarded $2,633,333.33 in attorneys' fees, which represents one-third of the total settlement fund.
   b. The court approves payment of litigation costs in the amount of $193,368.37 and administrative expenses in the amount of $43,497.57, as calculated by class counsel.
   c. The court approves payment of a service award to the class representative, Beth Andrew-Berry, in the amount of $45,000.
3. This action hereby is dismissed with prejudice. The Clerk of Court is asked, respectfully, to please close this case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 19th day of September, 2025.

                                        /s/
                            OMAR A. WILLIAMS
                            UNITED STATES DISTRICT JUDGE